CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 21 2014

JULIA C. DUDLEY, CLERK
BY: /s/ Carmody
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| SAGE MCGIRK, | Civil Action No. 3:13CV00020 |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | By: Hon. Glen E. Conrad |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON SUBSCRIBING TO POLICY NO. B0595/TA044390Y, et al., | Chief United States District Judge |
| Defendants. | |

This case is presently before the court on the motion to dismiss filed by Certain Underwriters at Lloyd's, London Subscribing to Policy No. B0595/TA044390Y ("Lloyd's"). For the reasons set forth below, the motion will be granted.

### Factual Background

On June 13, 2009, plaintiff Sage McGirk participated in a group skydive offered by Skydive Factory. Robert Mehl, an agent of Skydive Factory, piloted the airplane carrying the group, which took off from the Orange County Airport in Orange, Virginia. "After the jumpers exited the plane" upon reaching the proper altitude and position, "Mehl turned and made a low pass over the landing area." Compl. ¶ 13. In doing so, "the aircraft struck McGirk's parachute in mid-air, which caused him to fall to the ground and suffer serious injuries." Id.

At the time of the incident, Skydive Factory had an aircraft hull and liability insurance policy issued by Lloyd's ("the Policy"). The Policy insured Skydive Factory and others against certain liability and property damage arising from Skydive Factory's use of particular aircraft, including the DeHavilland DHC-6 Twin Otter operated on the day of the incident.

The Policy's Schedule provides as follows:

**The Interest:**

> To cover the Insured against Hull physical loss or damage and to indemnify them in respect of their legal liability arising out of the ownership and/or operation of aircraft as per schedule but excluding passenger legal liability and excluding liability to occupants.

. . .

**The Sum Insured:**

> Hull as per schedule
> Combined Single Limit (Bodily Injury/Property Damage) excluding Passenger Legal Liability, excluding Liability to occupants and excluding Liability to and of jumpers after descending from aircraft and whilst attempting to exit the aircraft
> USD 1,000,0000 any one occurrence

Compl. Ex. A at 1.

The pertinent Insuring Agreement provides as follows:

COVERAGE E - SINGLE LIMIT – BODILY INJURY (EXCLUDING PASSENGERS) AND PROPERTY DAMAGE LIABILITY.

To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, excluding any passenger, and for damages because of injury to or destruction of property, including the loss of use thereof, caused by an occurrence and arising out of the ownership, maintenance or use of the Aircraft.

Id. at 14. The Policy defines the term "Passenger" to mean "any person while in, on or boarding the Aircraft for the purpose of riding or flying therein or alighting from the Aircraft following flight or attempted flight therein." Id. at 17.

An endorsement to the Policy contains the following exclusion ("the Exclusion"):

1. Combined Single Limit (Bodily Injury/ Property Damage) excluding Passenger Legal Liability, excluding Liability to Occupants and excluding Liability to and of the jumpers after descending from aircraft and whilst attempting to exit the Aircraft.

Id. at 21. The endorsement defines the term "Occupant" to mean "a Passenger or a member of the Crew." Id.

## Procedural History

On November 15, 2010, McGirk filed a personal injury suit against Mehl and Skydive Factory in the Circuit Court for the City of Richmond. Lloyd's denied coverage and refused to defend Mehl. Mehl ultimately agreed to the entry of a judgment against him in the amount of $975,000.00. By separate agreement, McGirk agreed not to enforce the judgment against Mehl in excess of $3,000.00, and to accept from Mehl an assignment of his rights to pursue redress from Lloyd's.

On March 26, 2013, McGirk filed the instant action in the Circuit Court for the County of Orange, requesting a judgment declaring that Lloyd's was obligated to defend and indemnify Mehl, and is liable for the consent judgment.[1] Lloyd's removed the action to this court on the basis of diversity jurisdiction, and then moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Relying on the Exclusion set forth above, Lloyd's argues that the Policy plainly excludes coverage for any liability to skydivers like McGirk and, thus, that McGirk has failed to state a claim upon which relief can be granted.

---

[1] Mehl and Skydive Factory were also named as defendants in the instant action, but "only to the extent that they are necessary parties for the adjudication of the request for a declaratory judgment." Compl. ¶ 30. "No damages or other relief is sought against them." Id.

## Standard of Review

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). In reviewing a motion to dismiss under this rule, the court must "accept as true all well-pleaded allegations" and construe those allegations in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion, the court may consider exhibits attached to or referred to in the complaint. See Fayetteville Investors v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991); Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999).

## Discussion

### I. The policy excludes coverage for liability to McGirk.

Under Georgia law, which the parties agree controls, "the interpretation of an insurance policy, including the determination and resolution of ambiguities, is a question of law for the court to decide." Giddens v. Equitable Life Assurance Soc'y, 445 F.3d 1286, 1297 (11th Cir. 2006) (applying Georgia law). "The [policy] is to be considered as a whole and each provision is to be given effect and interpreted so as to harmonize with the others." Lavoi Corp. v. Nat'l Fire Ins. of Hartford, 666 S.E.2d 387, 391 (Ga. Ct. App. 2009). When a policy term is ambiguous, or is capable of two reasonable interpretations, it is construed in the light most favorable to the insured and against the insurer. Giddens, 445 F.3d at 1297. However, if a policy exclusion is unambiguous, and only one reasonable interpretation is possible, "it must be given effect even if beneficial to the insurer and detrimental to the insured." Hays v. Ga. Farm Bureau Mut. Ins. Co.,

4

722 S.E.2d 923, 926 (Ga. Ct. App. 2012). Courts may "not strain to extend coverage where none was contracted or intended." Id.

As set forth above, an endorsement to the Policy contains the following Exclusion at issue in this case:

> Combined Single Limit (Bodily Injury/Property Damage) excluding Passenger Legal Liability, excluding Liability to Occupants and excluding Liability to and of the jumpers after descending from aircraft and whilst attempting to exit the Aircraft.

Compl. Ex. A at 21. Lloyd's argues that this provision is capable of only one reasonable interpretation, namely that the Policy excludes coverage for liability to skydivers: (1) while they are in, on, or boarding the aircraft as passengers; (2) while they are attempting to exit the aircraft; and (3) after they have descended or jumped from the aircraft. Because McGirk alleges that Mehl "struck McGirk's parachute in mid-air, which caused him to fall to the ground," Lloyd's maintains that the exclusion applies on its face to the claim asserted by McGirk for injuries he sustained after jumping from the aircraft.

The insurance company's interpretation of the Exclusion is supported by the United States Court of Appeals for the Fifth Circuit's decision in Willingham v. Life & Casualty Ins. Co., 216 F.2d 226 (5th Cir. 1954). In Willingham, the beneficiary of a life insurance policy, whose husband jumped or was thrown from a private airplane, sought to avoid an accidental death benefit exclusion for "death resulting from operating, riding in, or descending from any kind of aircraft . . . ." Id. at 227. The Fifth Circuit held that the exclusion was "unambiguous and its meaning clear," and that the district court properly held that the plaintiff was not entitled to recover the accidental death benefit. Id. at 227-28. Relevant to the instant case, the Fifth Circuit found it "too clear for serious argument that . . . 'descending from' included . . . jumping from the airplane" and otherwise leaving or exiting the airplane in any manner. Id. at 227. As the Court explained:

5

> 'Descending from' can also refer to such sudden and precipitate dropping
> or falling, but, as ordinarily used, it refers to a more gradual or deliberate
> movement. For example, when we say that a person descended the steps
> or descended from a tower, we do not mean that he fell down the steps or
> out of the tower. 'Descend' is derived from the Latin 'de,' down, plus
> 'scandere' climb. As used in the Accidental Death Benefit part of this
> policy, 'descending from' means something different from the things
> already included in the phrase 'riding in'; it includes, we think, such things
> as making a voluntary descent by parachute not because the plane is about
> to crash, or as descending from the plane after it has landed, things
> separated in causal connection from the 'riding in.'

Id. at 228; see also Webster's Third Int'l Dictionary 609 (1986) (defining "descend" as "to go or come down," and noting that the words "descend" and "alight" "have in common a sense of getting or coming down from a height," and that "one alights . . . when one gets down from a carriage, gets out of a car or off a plane").

In an effort to distinguish Willingham and create an ambiguity, McGirk argues that he was struck while descending from the aircraft rather than after descending from the aircraft, and that the Policy differs from the one in Willingham, since it only excludes "liability . . . to the jumpers after descending." Pl.'s Response 10 (emphasis in original). For the following reasons, however, the court finds this argument unpersuasive.

First, McGirk's emphasis on the word "after" is misguided, since it eliminates the remaining part of the exclusion referring to the defining act, ie., "after descending from aircraft" (emphasis added). Since "descending" from the aircraft plainly means getting down, alighting, or "jump[ing] from" the aircraft, as Willingham holds, once that act occurs, anything that happens subsequent to that act is logically "after" the act.

Additionally, McGirk's suggested interpretation – that "after descending from aircraft" refers only to the point in time when the jumper has finally reached the ground and, thus, that coverage was not excluded for the period of time in which McGirk was in the air – is inconsistent

6

with the remaining portions of the Exclusion. See Harkins v. Progressive Gulf Ins. Co., 586 S.E.2d 1, 3 (Ga. Ct. App. 2003) ("In construing an insurance contract, a court must consider it as a whole, give effect to each provision, and interpret each provision to harmonize with each other.") (internal citation and quotation marks omitted). The Exclusion is plainly intended to exclude coverage for all phases of skydiving. In addition to excluding coverage for liability to jumpers after descending from the aircraft, the Exclusion also specifically excludes coverage for jumpers while they are boarding the aircraft, riding in the aircraft as passengers, and attempting to exit the aircraft. Given the clear intent of the Exclusion, McGirk's suggested reading, which would create a small window of coverage for jumpers after they have jumped from the aircraft but before they have reached the ground, is unreasonable.

Here, the complaint plainly establishes that McGirk was injured "after" he exited, jumped from, alighted from, or descended from the aircraft. See Compl. ¶ 13 ("After the jumpers exited the plane, Mr. Mehl turned and made a low pass over the landing area . . . . [T]he aircraft struck McGirk's parachute in mid-air, which caused him to fall to the ground and suffer serious injuries."). All of these phrases have the same meaning and the effect is unavoidable: since McGirk was injured after he descended from the airplane, the Exclusion precludes coverage for his underlying claim.

In his response to the motion to dismiss, McGirk raises a number of other challenges related to the wording of the Policy, which must be rejected. First, McGirk suggests that the Exclusion "is not an exclusion at all," since it is set forth in an endorsement rather than in the section of the Policy containing the subheading "EXCLUSIONS." Pl.'s Response 6. This argument is without merit. Under Georgia law, a policy must be construed in its entirety, giving effect to all provisions, including any endorsements. See Ga. Code Ann. § 33-24-16 ("Every

7

insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application made a part of the policy."). Consistent with this rule, the Endorsements section of the Policy specifically provides that it is "[a]ttaching to and forming part of this Policy." Compl. Ex. A at 21. Accordingly, the fact that the Exclusion is set forth in an endorsement does not render it unenforceable. See Cotton States Mut. Ins. Co. v. Coleman, 530 F.2d 229, 230 (Ga. Ct. App. 2000) (rejecting the argument "that the exclusion was 'camouflaged' and 'unclear' because it was contained in an endorsement instead of in the body of the policy").

Next, McGirk argues that the Exclusion "is not even comprehensible," because some of the terms, such as "jumpers," are undefined. See Pl.'s Response at 7 ("[W]ho are 'the jumpers'? 'Jumpers' is not a defined term."). However, the fact that an exclusion contains an undefined term does not render it ambiguous. Under Georgia law, "[u]nless otherwise defined in the insurance policy, terms in the policy are given their plain, ordinary, and popular meaning as supplied by dictionary." State Farm Fire & Cas. Co. v. Bauman, 723 S.E.2d 1, 3 (Ga. Ct. App. 2012). Webster's defines a "jumper" as "a person who jumps." Webster's Third Int'l Dictionary 1225 (1986). Applying this definition, the court finds no ambiguity in the use of the term "jumpers," and concludes that the term unquestionably includes skydivers like McGirk, who jump from aircraft. This conclusion is supported by McGirk's own pleadings, in which he repeatedly refers to himself as a "jumper." See Underlying Compl. ¶ 13; Compl. ¶ 13; Pl.'s Response 1.

McGirk also takes issue with the fact that the term "Liability" is capitalized, yet undefined, arguing that "[t]here is no way to know" what the term means. Pl.'s Response 7. This argument is also unavailing. Since "Liability" is not defined in the policy, the term must be given its plain

8

and ordinary meaning. Bauman, 723 S.E.2d at 3. Black's Law Dictionary defines "liability" as "[t]he quality or state of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment." Black's Law Dictionary 997 (9th ed. 2009); see also Webster's Third Int'l Dictionary 1302 (1986) (defining "liability" as "[t]he quality or state of being liable < the liability of an insurer >"). The mere fact that "Liability" is capitalized in the Exclusion does not prevent a reasonable person from understanding the provision, or otherwise render it ambiguous.

McGirk offers a similar capitalization argument with respect to the word "aircraft" in the phrase "after descending from aircraft." The Policy indicates that the word "Aircraft" refers to the aircraft described in the Policy, which includes the particular plane from which McGirk jumped. Compl. Ex. A at 24. Since "aircraft" is not capitalized in the applicable portion of the Exclusion, McGirk suggests that the Exclusion only applies to skydivers who jump from "some other airplane." Response in Opp'n 8. The court agrees with Lloyd's that such an interpretation is nonsensical, and that McGirk clearly descended "from aircraft" for purposes of the Exclusion. See Webster's Third Int'l Dictionary 46 (1986) (defining "aircraft" to include "airplanes").

## II. Coverage is not mandated by Georgia statute.

In his final argument, which was the subject of supplemental briefing by the parties, McGirk maintains that coverage for his injuries is required by Georgia statute. For the following reasons, the court concludes that this argument is also without merit.

McGirk's statutory argument is based on § 33-7-9 of the Georgia Code, which defines "vehicle insurance" as follows:

> Vehicle insurance is insurance against loss of or damage to any land vehicle or aircraft, any draft or riding animal, or to property while contained therein or thereon or being loaded or unloaded therein or therefrom from any hazard or cause, and against any loss, liability, or expense resulting from or incident to ownership,

9

maintenance, or use of any such vehicle, aircraft, or animal, together with insurance against accidental death or accidental injury to individuals, including the named insured, while in, entering, alighting from, adjusting, repairing, cranking, or caused by being struck by a vehicle, aircraft, or draft or riding animal, if such insurance is issued as a part of insurance on the vehicle, aircraft, or draft or riding animal; and provisions of medical, hospital, surgical, and disability benefits to injured persons, funeral and death benefits to dependents, beneficiaries or personal representatives of persons killed, irrespective of legal liability of the insured, when issued as an incidental coverage with or supplemental to liability insurance.

Ga. Code Ann. § 33-7-9. The statute is contained in Chapter 7 of Title 33, which is labeled "Kinds of Insurance . . . ." The chapter includes provisions defining other types of insurance, including accident and sickness insurance, casualty insurance, credit insurance, life insurance, marine and transportation insurance, property insurance, surety insurance, and title insurance. See Ga. Code Ann. §§ 33-7-2 – 33-7-8.

The court agrees with Lloyd's that § 33-7-9 itself does nothing more than provide a definition of the term "vehicle insurance." On its face, the statute does not mandate coverage, much less use any words suggesting an affirmative obligation, such as "shall," "must," or "require." Instead, the statute contains provisions demonstrating that it at most contemplates that other types of coverage are also considered "vehicle insurance" if they form part of the liability insurance described in the first portion of the statute. As set forth above, § 33-7-9 states that "vehicle insurance" is insurance against liability resulting from use of an aircraft, "together with" insurance against injury "while in, entering, alighting from, adjusting, repairing, cranking, or caused by being struck by . . . [an] aircraft . . . <u>if such insurance is issued as part of insurance on the . . . aircraft</u>." Ga. Code Ann. § 33-7-9 (emphasis added). The statute likewise provides that "vehicle insurance" includes medical and disability benefits "<u>when</u> [such benefits are] <u>issued</u> as an incidental coverage with or supplemental to liability insurance." Id. (emphasis added). These conditional provisions further negate the notion that the statute mandates coverage.

10

Section 33-7-9 is referenced in only two other statutes, one of which is § 31-11-33. This statute supports the determination that § 33-7-9 merely provides a definition or description of vehicle insurance, and that it does not mandate coverage in the instant case.[2] Section 31-11-33, titled "Insurance coverage a condition of licensing," provides that "[e]very air ambulance operated by persons engaged in providing air ambulance service in this state shall have insurance coverage as <u>described</u> in Code Section 33-7-9." Ga. Code Ann. § 31-11-33(a) (emphasis added). Here, of course, there has been no assertion that the subject aircraft, which was used for parachute jumpers, was an "air ambulance."

Further support for the conclusion that § 33-7-9 itself does not mandate coverage can be found by comparing the statute to the provisions of the Georgia Code which specifically require coverage for "motor vehicles." See Ga. Code Ann. § 33-34-3(a)(1) ("All policies of motor vehicle liability insurance issued in this state must be in accordance with the requirements of this chapter. Such policies shall contain at least the minimum coverages required under this chapter and shall be issued for a minimum term of six months."); Ga. Code Ann. § 33-34-4 ("No owner of a motor vehicle required to be registered in this state or any other person, other than a self-insurer as defined in this chapter, shall operate or authorize any other person to operate the motor vehicle unless the owner has motor vehicle liability insurance equivalent to that required as evidence of security for bodily injury and property damage liability under Chapter 9 of Title 40, the 'Motor Vehicle Safety Responsibility Act.'"). The term "motor vehicle" is defined as "a vehicle having more than three load-bearing wheels of a kind required to be registered under the laws of this state relating to motor vehicles designed primarily for operation upon the public streets, roads, and

---

[2] The other statute is § 33-7-3, which likewise supports the determination that § 33-7-9 merely defines the term "vehicle insurance." See Ga. Code Ann. § 33-7-3 ("Casualty insurance includes vehicle insurance as <u>defined</u> in Code Section 33-7-9 . . . .") (emphasis added).

11

highways and driven by power other than muscular power." Ga. Code Ann. § 33-34-2. Thus, an aircraft is not a "motor vehicle" for which coverage is required.

McGirk's theory that § 33-7-9 mandates insurance coverage for accidents in which someone is struck by aircraft is also undermined by § 33-24-30 of the Georgia Code, which governs a specific category of exclusions in aircraft liability policies. Section 33-24-30 states that no insurance policy issued in Georgia covering liability for use of an aircraft shall exclude coverage because the aircraft is operated in violation of civil air regulations. Ga. Code Ann. § 33-24-30. No other types of exclusions are prohibited by the statute. Moreover, the statute goes on to state that it does not preclude the use of exclusions relating to the certification of the aircraft or the pilot, establishing requirements for pilot experience, or establishing limitations on the use of aircraft.[3] Id. Because the statute does not prohibit exclusions that may apply to a claim arising from an accident in which a person is struck by an aircraft, it further negates McGirk's theory that § 33-7-9 requires an insurer to always provide coverage for such accidents.

Finally, the court finds unpersuasive McGirk's reliance on United Services Automobile Association v. Carroll, 486 S.E.2d 613 (Ga. Ct. App. 1997), for the proposition that § 33-7-9 mandates coverage in the instant case. In Carroll, the insured tripped and injured herself on a concrete island at a gas station, after a truck backed toward her car and struck the rear driver's side. Carroll, 486 S.E.2d at 614. The insured sought medical coverage under her personal motor vehicle policy. Id. The issue on appeal was whether the insured was "occupying" the vehicle at the time of the accident, as required by her policy. Id. In rejecting the insurer's argument that the insured was not an "occupant" of the motor vehicle at the time of the accident, the Court of

---

[3] The permitted exclusions are identified as exceptions to the specific prohibition of an exclusion of coverage for violations of civil air regulations, and are by no means intended as an all-encompassing list of permitted exclusions.

Appeals stated, in part, as follows:

> Also in contrast [to another case], the case sub judice involves medical coverage for the named insured and comes under OCGA § 33-7-9, which mandates with the statutory minimum requirements of vehicle insurance, i.e., "Vehicle insurance is insurance against loss . . . from any hazard or cause, . . . or expense resulting from or incident to ownership . . . or use of any such vehicle . . . against accidental death or accidental injury to individuals, including the named insured, while in, entering, alighting from, adjusting, repairing, cranking, or caused by being struck by a vehicle . . . and provisions of medical . . . benefits to injured persons . . . when issued as an incidental coverage with or supplemental to liability insurance."

Id. at 615. While the Court of Appeals provided no further explanation as to how § 33-7-9 supported its decision that the insured was an "occupant" of her motor vehicle, the Court appeared to find support in the fact that the definition contained in the statute includes insurance for the named insured while "entering" a vehicle, which the court found to be the case based on the evidence presented at trial. See id. ("In the case sub judice, appellee had commenced the physical act of entering the car by opening the door and had physical contact with the vehicle when she was forced to abandon the entry by the sudden peril.").

The court agrees with Lloyd's that Carroll cannot be viewed as precedent for McGirk's theory that § 33-7-9 requires coverage in the instant case. Carroll clearly concerned the issue of "occupancy" for purposes of medical payments coverage under a motor vehicle liability policy. The case did not involve an aircraft liability policy, and the decision does not compel the conclusion that an aircraft liability insurer may not exclude coverage for injuries to jumpers. At most, Carroll seems to suggest that the description of vehicle insurance set forth in § 33-7-9 should be considered in conjunction with, and perhaps incorporated into, the "statutory minimum requirements" applicable to motor vehicles. See id. ("OCGA § 33-7-9 . . . mandates with the

13

statutory minimum requirements of vehicle insurance . . . .") (emphasis added).[4] As noted above, however, the minimum requirements for motor vehicle liability policies are set forth in other sections of the Georgia Code, and those requirements are not applicable to aircraft. In the absence of any statutory provision setting forth mandatory minimum requirements for aircraft liability insurance, or prohibiting insurers from excluding coverage for liability to jumpers, the court concludes that McGirk's statutory argument must be rejected.

## Conclusion

In sum, after considering the Policy in its entirety, the court concludes that the Exclusion is unambiguous and subject to only one reasonable interpretation: that the Policy excludes coverage for liability arising during any phase of skydiving, including the phase in which jumpers are in the air after jumping or descending from aircraft. Because McGirk was a jumper, and since he was injured after descending from the airplane piloted by Mehl, the court concludes that the Policy excludes coverage for liability to McGirk. The court further concludes that such coverage is not required by Georgia statute. Accordingly, the court will grant the insurer's motion to dismiss. All other pending motions will be dismissed as moot, and the action will be stricken from the active docket of the court.

---

[4] The court notes that McGirk's briefs misquote Carroll as stating that § 33-7-9 "mandates the statutory minimum requirements of vehicle insurance." See, e.g., Pl.'s Supp'l Br. at 4. McGirk's recitation of the decision was likely taken from the Lexis version, which omits the word "with." See Carroll, 1997 Ga. App. LEXIS 537, at ***4 (last visited Feb. 22, 2014). The court has reviewed the bound volume of the South Eastern Reporter containing the Carroll opinion and confirmed that the opinion states that § 33-7-9 "mandates with the statutory minimum requirements of vehicle insurance . . . ." Carroll, 486 S.E.2d at 615 (emphasis added).

14

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This  21st  day of February, 2014.

                                         /s/ Jon Conrad
                                     Chief United States District Judge